**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| Teresa Pence aka Teresa Horsley<br>523 Hilltonia Ave.<br>Columbus, Ohio 43223,<br><br>    Plaintiff,<br><br>vs.<br><br>Rocket Mortgage, LLC, as successor in interest to Nationstar Mortgage, LLC, d/b/a Mr. Cooper<br>c/o CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, Ohio 43219,<br><br>U.S. Bank Trust National Association, not in its Individual Capacity, but solely as Trustee of Citigroup Mortgage Loan Trust 2021-RP6<br>c/o Nationstar Mortgage, LLC, d/b/a Mr. Cooper<br>c/o CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, Ohio 43219,<br><br>    Defendants. | Judge:<br><br>Case No: 2:26-cv-234<br><br><br>**JURY DEMAND ENDORSED HEREIN** |

**COMPLAINT FOR MONEY DAMAGES**

  The following allegations are based upon Plaintiff Teresa Pence aka Teresa Horsley's ("Ms. Pence" or "Plaintiff") personal knowledge, the investigation of counsel, and information and belief. Plaintiff, through counsel, alleges as follows:

**I. INTRODUCTION**

1. Defendant Rocket Mortgage, LLC, as successor in interest to Nationstar Mortgage, LLC, d/b/a Mr. Cooper ("Defendant Rocket"), failed in its duties from the outset of taking over as servicer

1

of Plaintiff's residential mortgage loan from Rushmore Loan Management Services ("RLMS"). Plaintiff made numerous attempts to have Defendant Rocket rectify payment mishandling issues that had occurred with RLMS, only to have *additional* and far more serious issues occur with Defendant Rocket, including but not limited to: (1) misrepresentations as to the status of the loan being allegedly in default; (2) misapplication of payments; (3) inconsistent verbal and written communications; (4) improper handling of reported issues; and (5) provision of inaccurate/inconsistent addresses. These issues culminated in Defendant Rocket filing a foreclosure Complaint through U.S. Bank Trust National Association, not in its Individual Capacity, but solely as Trustee of Citigroup Mortgage Loan Trust 2021-RP6 c/o Nationstar Mortgage, LLC, d/b/a Mr. Cooper ("Defendant US Bank"), in violation of the Real Estate Settlement Procedures Act ("RESPA"). Plaintiff sought out counsel to send a qualified written request to Defendant Rocket pursuant to RESPA, as well as to defend against the foreclosure lawsuit. Defendant Rocket failed to adequately respond to such correspondence, in violation of RESPA. Furthermore, Defendant Rocket's conduct in this matter constitutes violations of Ohio's Residential Mortgage Lending Act ("RMLA").

II. **PRELIMINARY STATEMENT**

2. Plaintiff institutes this action for actual damages, statutory damages, attorney fees, and the costs of this action against Defendant Rocket for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, Regulation X, 12 C.F.R. § 1024, and Ohio's Residential Mortgage Lending Act ("RMLA"), O.R.C. § 1322.01, *et seq.*, as well as a claim against Defendant US Bank for breach of contract.

**III.    JURISDICTION**

3. This Court has subject matter jurisdiction over Count One under RESPA, 12 U.S.C. 2614, and 28 U.S.C. 1331 and 1337.

4. This Court has subject matter jurisdiction over Count Two under RESPA, 12 U.S.C. 2614, and 28 U.S.C. 1331 and 1337.

5. This Court has subject matter jurisdiction over Count Three under 28 U.S.C. 1332.

6. The Court has personal jurisdiction over Defendants because Defendants transact business within this District, the loan at issue was incurred within this District, and the property which was the subject of the loan at issue is located within this District. *International Shoe v. Washington*, 326 U.S. 310 (1945).

7. Venue is proper in accordance with 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and the property is located in this judicial district.

**IV.    PARTIES**

8. Plaintiff is a natural person currently residing within this Court's jurisdiction at 523 Hilltonia Avenue, Columbus, Ohio 43223.

9. At all relevant times, Plaintiff was and is a "person" within the meaning of RESPA at 12 U.S.C. § 2602(5).

10. At all relevant times, Plaintiff was and is a "borrower" within the meaning of RESPA.

11. Defendant Rocket Mortgage, LLC ("Defendant Rocket"), is a company organized under the laws of the United States of America with its principal place of business in Michigan.

12. At all relevant times, Defendant Rocket was and is a "person" within the meaning of RESPA, 12 U.S.C. § 2602(5).

13. On or about February 2, 2026, Defendant Rocket merged with Nationstar Mortgage, LLC ("Nationstar"), with Defendant Rocket as the surviving entity.

14. As the successor in interest to Nationstar, at all relevant times, Defendant Rocket was and is a loan "servicer" of Plaintiff's "federally related mortgage loan" within the meaning of those terms in RESPA respectively at 12 U.S.C. §§ 2605(i)(2) and 2602(1).

15. As the successor in interest to Nationstar, at all relevant times, Defendant Rocket was acting as the servicing agent of Defendant US Bank.

16. As the successor in interest to Nationstar, at all relevant times, Defendant Rocket was engaged in "servicing" within the meaning of RESPA, 12 U.S.C. § 2605(i)(3).

17. Defendant US Bank is a company organized under the laws of the United States of America with its principal place of business in Minnesota.

18. At all relevant times, Defendant US Bank was the creditor and owner of the subject mortgage loan.

19. At all relevant times, Defendant US Bank controlled, or had the right to control, the actions of Defendant Rocket as its agent.

**V.     FACTUAL ALLEGATIONS**

20. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

21. Each action or communication herein ascribed to Plaintiff also includes the actions and communications of Plaintiff's authorized agents.

22. Each action or inaction alleged herein against Defendant Rocket and Defendant US Bank is also an allegation of action or inaction by Defendants' agents, predecessors, successors, employees, contractors, assignees, assignors, and servicers, as appropriate.

23. On or about September 19, 2006, Plaintiff financed the residential real property located at 523 Hilltonia Avenue, Columbus, Ohio 43223, through Flagstar Bank with a note secured by a mortgage (collectively the "Mortgage Loan").

24. On or about February 9, 2022, Defendant Rocket, as the purported Note holder at that time, assigned the Mortgage Loan to Defendant US Bank.

25. In or about February 2022, Rushmore Loan Management Services ("RLMS") became the servicer on the Mortgage Loan.

26. Plaintiff continued to make payments under the Mortgage Loan, frequently paying months in advance.

27. During its servicing of the Mortgage Loan, RLMS misapplied multiple payments from Plaintiff.

28. During its servicing of the Mortgage Loan, RLMS applied fees to the account without providing an explanation for the fees to Plaintiff.

29. Plaintiff made multiple attempts to address these issues with RLMS to no avail.

30. In or about late 2023, Defendant Rocket acquired Rushmore Loan Management Services ("RLMS") and rebranded it as Rushmore Servicing.

31. As part of the acquisition, Defendant Rocket became the servicer on the Mortgage Loan in or about October 2023.

32. From the outset, Defendant Rocket's mortgage statements indicated that RLMS had not corrected prior misapplied payments.

33. Plaintiff notified Defendant Rocket that payments had not been applied correctly by RLMS, and that payments should be more current than Defendant Rocket was representing.

34. Plaintiff continued to make payments under the Mortgage Loan.

5

35. Plaintiff made the payments via money order due to the past payment issues with RLMS.

36. Defendant Rocket provided Plaintiff with multiple payment addresses, some of which had previously applied to RLMS.

37. Defendant Rocket's lack of clarity and consistency caused Plaintiff to send multiple payments to an address that was later revealed to be defunct in the aftermath of Defendant Rocket's acquisition of RLMS.

38. Plaintiff had to have the United States Postal Service retrieve and return these payments to Plaintiff in order for Plaintiff to send them to the correct address.

39. Plaintiff continued to make payments under the Mortgage Loan.

40. In or around December 2024, Defendant Rocket advised Plaintiff that the account was falling farther behind.

41. Plaintiff told Defendant Rocket again about the issues with the RLMS amounts and with the payment address, stating that she had sent sufficient payments to keep the account out of default.

42. On or about January 10, 2025, Defendant Rocket sent a Default Letter to Plaintiff.

43. The Default Letter alleged that Defendant Rocket had not received payments for November and December 2024.

44. On or about January 29, 2025, Plaintiff called Defendant Rocket regarding the Default Letter.

45. During that call, Plaintiff raised the previous concerns regarding application of payments and charging of fees by RLMS that had bled over into Defendant Rocket's accounting.

46. At the end of the call, Plaintiff agreed to pay $651.67.

47. The representative noted this amount to the account, and that Plaintiff would pay it via mail by February 14, 2025.

48. The representative did not advise Plaintiff that Defendant Rocket would not accept the payment.

49. On or about January 31, 2025, Plaintiff sent the agreed payment in the form of a $700.00 money order to Defendant Rocket.

50. On or about February 14, 2025, Defendant Rocket sent a letter to Plaintiff ("First MO Letter"), acknowledging the receipt of the $700.00 payment but claiming that it would not be applied because it did not meet the amount needed to bring the account current.

51. The First MO Letter stated, "As of the date of this letter, the *total* amount required to bring this account current is $1,415.71" (emphasis added).

52. Defendant Rocket kept the $700.00 money order instead of returning it.

53. Plaintiff promptly sent an additional payment in the form of a $1,000.00 money order.

54. On or about February 26, 2025, Defendant Rocket sent another letter to Plaintiff ("Second MO Letter"), similar to the First MO Letter, acknowledging the receipt of the payment but claiming that it would not be applied because it did not meet the amount needed to bring the account current.

55. The Second MO Letter stated, "As of the date of this letter, the *total* amount required to bring this account current is $1,415.71" (emphasis added).

56. This "total amount" was the same as the earlier letter, so therefore the payment amounts received, being different, were not calculated as a part of the total amount in either letter.

57. As of the date of the Second MO Letter, Defendant Rocket had in its possession a total of $1,700.00 in money order payments from Plaintiff.

58. The $1,700.00 in Defendant Rocket's possession was greater than the $1,415.71 "total amount required to bring this account current" stated in both letters.

59. Defendant Rocket did not apply the $1,700.00 to the account to bring it current under the letters.

60. Defendant Rocket kept the $1,700.00 in money orders.

61. To date, Defendant Rocket has not applied the $1,700.00 to the account, nor has it returned the money orders to Plaintiff.

62. A money order, unlike a personal check, is a cash substitute and has the cash value of the amount on its face.

63. Defendant Rocket advised Plaintiff that it temporarily holds insufficient payments pending additional payments, but it ultimately shreds the insufficient payments, including money orders.

64. In shredding money orders without applying them to a borrower's account or returning them to the borrower, Defendant Rocket is willfully destroying cash that is the property of the borrower.

65. In shredding Plaintiff's money orders without applying them to Plaintiff' account or returning them to Plaintiff, Defendant Rocket willfully destroyed Plaintiff's property.

66. Plaintiff sent in another payment in the form of a $500.00 money order on or about March 5, 2025.

67. Although Plaintiff sent the $500.00 money order to the same address as the previous payments, Defendant Rocket never acknowledged its receipt of the payment or advised Plaintiff of the payment's handling.

68. Defendant Rocket later mailed the $500.00 money order back to Plaintiff, without any accompanying documentation or explanation for doing so, and without any accounting for the $1,700.00 that it did not return.

69. On or about March 14, 2025, Plaintiff sent in an additional payment in the form of a $770.00 money order.

70. Defendant Rocket received the $770.00 money order on March 17, 2025, and endorsed it on March 18, 2025.

71. Unlike its handling of the $700.00, $1,000.00, and $500.00 money orders, Defendant Rocket put the $770.00 money order into Plaintiff's suspense account on March 18, 2025, but it did not apply it to the Mortgage Loan at that time.

72. Defendant Rocket did not send Plaintiff a letter as to the receipt or disposition of the $770.00 money order.

73. Six months later, on September 25, 2025, Defendant Rocket applied $764.04 of the $770.00 suspense balance to the Mortgage Loan as the monthly payment for November 2024, noting the effective date of that payment as March 17, 2025.

74. The communications from Defendant Rocket to Plaintiff in early 2025 (including both MO Letters) identified a specific employee of Defendant Rocket as the account's Dedicated Loan Specialist ("DLS").

75. The communications from Defendant Rocket directed Plaintiff to specifically contact the DLS for assistance with the Mortgage Loan and with resolving the default status.

76. Plaintiff spoke with the DLS by phone on multiple occasions about the Mortgage Loan from February through April 2025, including on or about April 2, 2025.

77. During the April 2, 2025, call, Plaintiff explained to the DLS that they had sent in multiple payments that Defendant Rocket was not applying correctly to the account.

78. Plaintiff questioned how the Mortgage Loan could still be in default and pending a foreclosure filing if Plaintiff had made these payments, especially in view of the agreement from the January 29 representative and the February letters.

79. The DLS did a detailed review of the account during the call.

80. The DLS stated that she could see that the payments were not being applied correctly.

81. The DLS stated that the account should not be in default.

82. The DLS stated that the 120-day rule would legally prevent Defendant Rocket from filing a complaint in foreclosure if the payments were applied correctly.

83. The DLS told Plaintiff that she was escalating the issue to her manager to be corrected.

84. Plaintiff asked about sending in additional payments at that time.

85. The DLS instructed Plaintiff not to send in additional payments until the issue was corrected, as the payments would not be accepted and could be shredded.

86. The DLS instructed Plaintiff to only speak with her or her supervisor when she calls in, as she was emailing the information to her manager, and therefore no other representative would be able to see the details of the issue.

87. Five days later, on or about April 7, 2025, Defendant Rocket filed a Complaint in Foreclosure in the Franklin County Court of Common Pleas.

88. On or about April 11, 2025, Plaintiff called the DLS again.

89. The DLS reiterated her findings from the April 2 call, including the payments that were not being applied correctly by Defendant Rocket.

90. Due to the Complaint in Foreclosure and Defendant Rocket's failure to resolve the errors or apply the payments correctly, Plaintiff had no choice but to obtain and pay for legal counsel to

10

defend against the lawsuit and to send a qualified written request ("QWR") pursuant to the Real Estate Settlement and Procedures Act ("RESPA").

91. Defendant Rocket provided a Loss Mitigation Application to Plaintiff on or about May 13, 2025.

92. The Loss Mitigation Application that Defendant Rocket provided was outdated, containing phone numbers and a submission address that were no longer valid as they were attributed to RLMS, not Defendant Rocket.

93. Had Plaintiff completed and submitted the provided Application, it would have caused needless delay and potential prejudice to Plaintiff, especially in view of the pending foreclosure case.

94. Had Plaintiff completed and submitted the provided Application, it could have resulted in Plaintiff's personal information being compromised by an unintended individual or entity receiving it.

95. This error on the part of Defendant Rocket is consistent with the errors claimed by Plaintiff in previously being given incorrect/outdated payment address information by Defendant Rocket.

96. On or around October 2, 2025, Plaintiff, through counsel, sent a QWR to Defendant Rocket containing notices of error and requesting certain information.

97. The QWR officially notified Defendant Rocket of errors related to the Loan, including but not limited to the following:

    a. Failing to correct misapplication of payments by Rushmore Loan Management Services;

    b. Failing to correct misapplication of payments by Defendant Rocket, d/b/a Rushmore Servicing;

11

    c. Improper refusal to accept monthly payments;

    d. Improper fees and/or charges assessed to the account;

    e. Improperly asserting that the loan was in default when it was not; AND

    f. Providing incorrect/inconsistent addresses to Plaintiff for payment submission.

98. The QWR also requested Defendant Rocket provide information, including but not limited to, the following:

    a. All telephone call logs, recordings, and servicer notes regarding communications with Plaintiff, especially those related to the above errors and on which Defendant Rocket relied in its investigation into and formulating its response to the same;

    b. All written correspondence that evidences all actions and communications taken related to the loan;

    c. A complete payment history for the loan, including records of any attempted payments, rejected payments, or system notes reflecting why Plaintiff was unable to make payments;

    d. A detailed explanation of the communications, including any call logs, that led to Defendant Rocket's agents informing Plaintiff that the 2025 payments would be applied and that the loan would be brought current enough to prevent foreclosure; AND

    e. All account records referencing receipt, handling, and disposition of payments.

99. Plaintiff incurred legal fees and costs associated with preparing and mailing the QWR.

100. On or about November 10, 2025, Defendant Rocket responded to the QWR.

101. Defendant Rocket attempted to explain away the question regarding the address issues, although inadequately, and failed to acknowledge any errors on its part or that the issue had been previously raised by Plaintiff.

102. Defendant Rocket failed to adequately explain why it had refused to accept some of Plaintiff's payments while later accepting (but misapplying) another.

103. Defendant Rocket also failed to adequately explain the fees and charges to the account.

104. Defendant Rocket failed to properly respond to the Requests for Information.

105. Defendant Rocket failed to produce any recordings related to its agents' representations to Plaintiff that the loan was not in default and should not be in foreclosure.

106. Defendant Rocket completely avoided the specific request for an investigation into to its agents' representations to Plaintiff that the loan was not in default and should not be in foreclosure.

107. Defendant Rocket completely avoided the specific request for internal notes.

108. Defendant Rocket failed to fully respond to the requests for information.

109. Following the deposition of its corporate representative by Plaintiff's counsel on December 5, 2025, and following Plaintiff's subsequent responses to its Discovery requests, Defendant Rocket moved to dismiss its Complaint in Foreclosure on or about January 5, 2026.

110. As a direct and proximate result of Defendant Rocket's actions, Plaintiff incurred legal fees and costs associated with preparing and mailing the QWR.

111. As a direct and proximate result of Defendant Rocket's and Defendant US Bank's actions, Plaintiff incurred legal fees and costs associated with defending against the foreclosure complaint.

112. As a direct and proximate result of Defendant Rocket's and Defendant US Bank's actions, Plaintiff incurred damages in the form of improper fees assessed on the account, loss of credit, and loss of funds sent to Defendant Rocket that Defendant Rocket neither applied to the account balance nor returned to Plaintiff.

113. As a result of Defendant Rocket's actions, Plaintiff suffers severe emotional distress, including anxiety, stress, loss of reputation, and sleepless nights.

114. As a result of Defendant Rocket's actions, Plaintiff incurred the legal fees and expenses of bringing this lawsuit.

**VI. FIRST COUNT – RESPA QWR VIOLATIONS – DEFENDANT ROCKET**

115. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

116. Defendant Rocket's actions described in this Complaint constitute violations of RESPA, 12 U.S.C. § 1601, *et seq.*, and Regulation X, and 12 C.F.R. § 1024, *et seq*.

117. The QWR is a "qualified written request" as that term is defined in 12 U.S.C. 2605(e)(1)(B).

118. By failing to adequately respond to the QWR, Defendant Rocket violated RESPA, including pursuant to 12 U.S.C. 2605(e)(2) and 12 C.F.R. 1024.36.

119. By failing to provide Plaintiff with the information she requested, Defendant Rocket violated Regulation X, including pursuant to 12 C.F.R. 1024.36.

120. By failing to conduct a reasonable investigation into the errors noted by Plaintiff, Defendant Rocket violated Regulation X, including pursuant to 12 C.F.R. 1024.26(d).

121. By failing to adequately respond to Plaintiff's noted errors, Defendant Rocket violated Regulation X, including pursuant to 12 C.F.R. 1024.35(e).

122. By failing to correct the errors, Defendant Rocket violated Regulation X, including pursuant to 12 C.F.R. 1024.36.

123. Defendant Rocket regularly fails to evaluate and process its borrowers' loss mitigation applications in compliance with RESPA and Regulation X.

124. Defendant Rocket regularly fails to administer foreclosure lawsuits it brings against borrowers in compliance with RESPA and Regulation X.

125. Defendant Rocket has engaged in a pattern or practice of non-compliance with the requirements of RESPA and Regulation X.

126. As a result of Defendant Rocket's actions, Plaintiff incurred actual damages, including but not limited to, costs associated with preparing and sending the QWR and bringing this action, costs associated with defending the foreclosure Complaint, improper fees assessed on the account, and loss of credit.

127. As a result of Defendant Rocket's actions, Plaintiff suffers severe emotional distress, including anxiety, embarrassment, damage to reputation, stress, and sleepless nights.

128. Due to these violations, Defendant Rocket is liable to Plaintiff for actual damages to be determined at trial, additional damages in the amount of at least $2,000, plus attorney fees, and costs of the action, including pursuant to 12 U.S.C. § 2605(f).

### VII. SECOND COUNT – RESPA 120 DAY VIOLATION – DEFENDANT ROCKET

129. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

130. Defendant Rocket's actions described in this Complaint constitute violations of RESPA, 12 U.S.C. § 1601, *et seq.*, and Regulation X, and 12 C.F.R. § 1024.41.

131. Pursuant to 12 C.F.R. 1024.41(f), a servicer shall not make the first notice or filing for foreclosure unless the borrower's loan obligation is more than 120 days delinquent.

132. Plaintiff's Mortgage Loan was not delinquent more than 120 days at any time due to Plaintiff's submission of multiple payments that Defendant Rocket failed to apply correctly.

133. The payments submitted by Plaintiff were more than sufficient to bring the account current under the First MO Letter and Second MO Letter.

134. The payments submitted by Plaintiff, per Defendant Rocket's agent, had they been applied correctly by Defendant Rocket, were sufficient to have prevented default and foreclosure under the 120-day Rule.

135. Defendant Rocket prevented Plaintiff from curing any alleged default by instructing Plaintiff to not send additional payments until the errors were fixed.

136. Defendant Rocket never communicated to Plaintiff anything to the contrary of its agent's representations subsequent to that instruction, prior to its filing of the Foreclosure Complaint on or about April 7, 2025.

137. By filing the Foreclosure, Defendant Rocket violated Regulation X, 12 C.F.R. § 1024.41(f)(1).

138. Defendant Rocket regularly fails to evaluate and process its borrowers' account errors in compliance with RESPA and Regulation X.

139. Defendant Rocket regularly fails to administer foreclosure lawsuits it brings against borrowers in compliance with RESPA and Regulation X.

140. Defendant Rocket has engaged in a pattern or practice of non-compliance with the requirements of RESPA and Regulation X.

16

141. As a result of Defendant Rocket's actions, Plaintiff incurred actual damages, including but not limited to, costs associated bringing this action, costs associated with defending the fraudulent foreclosure Complaint, improper fees assessed on the account, and loss of credit.

142. As a result of Defendant Rocket's actions, Plaintiff suffers severe emotional distress, including anxiety, embarrassment, damage to reputation, stress, and sleepless nights.

143. Due to these violations, Defendant Rocket is liable to Plaintiff for actual damages to be determined at trial, additional damages in the amount of at least $2,000, plus attorney fees, and costs of the action, including pursuant to 12 U.S.C. § 2605(f).

**VIII. THIRD COUNT – BREACH OF CONTRACT – DEFENDANT US BANK**

144. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

145. The Mortgage Loan along with any amendments or modifications is a valid and enforceable contract between Defendant US Bank and Plaintiff.

146. Plaintiff complied with all material terms of the Mortgage Loan.

147. Defendant US Bank was required to accept monthly payments under the Mortgage Loan.

148. Defendant US Bank breached the agreement with Plaintiff when it refused to accept monthly payments from Plaintiff.

149. Defendant US Bank was required to send accurate monthly statements to Plaintiff under the Mortgage Loan.

150. Defendant US Bank breached the agreement with Plaintiff when it sent her inaccurate monthly mortgage statements.

151. Defendant US Bank breached the agreement with Plaintiff when it filed for foreclosure.

## IX. FOURTH COUNT – VIOLATIONS OF OHIO'S RMLA – DEFENDANT ROCKET

152. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

153. At all relevant times, Plaintiff was and is a Buyer as defined under O.R.C. § 1322.01(I).

154. At all relevant times, Defendant Rocket was and is a non-bank Mortgage Servicer as defined under O.R.C. § 1322.01(BB).

155. At all relevant times, Defendant Rocket was and is subject to the RMLA, O.R.C. § 1322.01 *et seq*.

156. Defendant Rocket's actions discussed herein violate the RMLA at O.R.C. § 1322.01, *et seq*.

157. By making false and misleading material statements, and by engaging in a continued course of misrepresentations, Defendant Rocket violated the RMLA, including pursuant to O.R.C. § 1322.40(B).

158. By engaging in conduct that constitutes improper, fraudulent, or dishonest dealings, Defendant Rocket violated the RMLA, including pursuant to O.R.C. § 1322.40(C).

159. As a result of Defendant Rocket's actions, Plaintiff has incurred actual damages, including but not limited to all costs associated with filing this cause of action, alleged loss of equity, improperly charged fees and interest, and loss of destroyed funds.

160. Defendant Rocket is liable to Plaintiff for damages, including but not limited to her actual damages to be determined at trial, including pursuant to O.R.C. § 1322.52(A)(1)-(2), punitive damages, including pursuant to O.R.C. § 1322.52(A)(3), the cost of this action and attorney fees, including pursuant to O.R.C. § 1322.52(A)(2), and other relief as this Court deems just and necessary.

X.     **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this Court:

161.   Assume jurisdiction of this case;

162.   Grant judgment in favor of Plaintiff on all counts and for the remedies sought in each count;

163.   Award Plaintiff maximum damages on the Counts, including the maximum statutory damages available, the maximum economic and non-economic damages available, including actual, emotional, general, punitive, and other damages;

164.   Award Plaintiff actual damages to be established at trial including pursuant to 12 U.S.C. § 2605(f);

165.   Award Plaintiff statutory damages in the amount of at least $2,000, plus attorney fees, and costs of the action, including pursuant to 12 U.S.C. § 2605(f);

166.   Award Plaintiff additional damages and costs;

167.   Issue a judicial determination of the rights and obligations of the parties; and

168.   Award such other relief as the court deems appropriate.

Dated this February 26, 2026.

                Respectfully Submitted,
                KOHL & COOK LAW FIRM, LLC

                */s/ Andrew J. Gerling*
                Andrew J. Gerling (0087605)
                438 E. Wilson Bridge Rd., Ste. 200
                Worthington, OH 43085
                PH (614) 763-5111
                FAX (937) 813-6057
                andrew@kohlcook.com
                *Attorney for Plaintiff*

## JURY TRIAL DEMANDED

The Plaintiff respectfully requests a jury trial on all triable issues.

<u>/s/ Andrew J. Gerling</u>
Andrew J. Gerling (0087605)
